IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| JOSE MIGUEL MARTE | : | NO. 22-115 |

**MEMORANDUM**

PRATTER, J.                                                                                                  JANUARY 8, 2024

Jose Miguel Marte, who has been deported from the United States three times, was charged in a one-count indictment with unlawful reentry in violation of 8 U.S.C. § 1326(a) and (b)(2). Mr. Marte filed a pro se motion to dismiss the indictment, arguing that the underlying removal order was invalid under 8 U.S.C. § 1326(d). He contends both (1) that he never received notice of the 1995 hearing which resulted in his underlying removal order, and (2) that his counsel was ineffective for failing to challenge that removal order before Mr. Marte was first deported in 1997. Neither of these contentions demonstrates that the underlying deportation order was fundamentally unfair. Thus, the Court denies Mr. Marte's motion to dismiss the indictment. The Court also denies Mr. Marte's motion for appointment of a criminal defense investigator.

**BACKGROUND**

Mr. Marte is a citizen of the Dominican Republic. He was admitted to the United States on March 18, 1994, assigned an alien identification number, and authorized to remain in this country for two years.

In July 1994, four months after his arrival in the United States, Mr. Marte was detained by Philadelphia Police, to whom Mr. Marte misidentified himself as Antonio Sosa-Hernandez. Immigration and Naturalization Services (INS) interviewed Mr. Marte the following day and,

1

under the impression that they were speaking to Antonio Sosa-Hernandez, issued Mr. Marte a second alien identification number. During that interview, Mr. Marte suggested that he entered the country illegally in 1991. Therefore, INS addressed an "Order to Show Cause and Notice of Hearing" to the alias Antonio Sosa-Hernandez and personally handed that document to Mr. Marte. Mr. Marte signed this Order and Notice as "Antonio Sosa" and affixed his right thumb print to it.[1] In lieu of a date and time for the hearing, the Order and Notice stated in English and Spanish: "To be calendared and notice provided by the Office of the Immigration Judge. Notice will be mailed to the address provided by the respondent." The document plainly stated that Mr. Marte was legally required to provide "an address . . . where [he] can be contacted" and advised Mr. Marte that notice would be "mailed only to the last address provided."

The Order and Notice arguably contained two addresses for "Antonio Sosa-Hernandez." The first address, 726 East Hilton Street, was typed into the document and later crossed out by hand. The second address, 726 East Allegheny Avenue, was handwritten next to the crossed-out Hilton Street address. Accordingly, in August 1994, the Office of the Immigration Judge sent notice of a January 1995 hearing by certified mail to "Antonio Sosa-Hernandez" at 726 East Allegheny Avenue. This notice was returned as undeliverable to the alias "Antonio Sosa-Hernandez" at that address.

When Mr. Marte failed to appear at the January 1995 hearing, the INS issued a "Warrant of Removal/Deportation" for Antonio Sosa-Hernandez. The immigration judge's order noted the absence of "Antonio Sosa-Hernandez," tried him in absentia, and found the Government's

---

[1] Eventually, fingerprint analysis would establish that Mr. Marte and "Antonio Sosa-Hernandez" were the same person. However, as of July 1994, INS operated as though Jose Miguel Marte and Antonio Sosa-Hernandez were two separate individuals with two separate alien identification numbers.

evidence sufficient to establish his deportability on the basis of entry without inspection. Mr. Marte did not appear for deportation the following month.

In January 1997, Mr. Marte was arrested in Philadelphia. The INS used fingerprint analysis that established that Antonio Sosa-Hernandez and Mr. Marte were the same person. Shortly thereafter, Mr. Marte was served another Order to Show Cause and Notice of Hearing—this time addressed to him—charging that he was deportable because of an allegedly fraudulent marriage that supported his original entry application. However, no hearing on that alleged fraud took place. In June 1997, an immigration judge terminated those proceedings because Mr. Marte had already been ordered deported in 1995 under the alias Antonio Sosa-Hernandez.[2] On August 20, 1997, Mr. Marte was removed from the United States on an American Airlines flight departing from Philadelphia.

Mr. Marte was removed from the United States a second time in June 2000, and in July 2003, having returned again, Mr. Marte pled guilty to two heroin distribution charges. In 2010, while serving his sentence for those charges, Mr. Marte moved to reopen his immigration proceedings, but this motion was denied as untimely. After serving his sentence, Mr. Marte was deported for a third time in October 2016.

In February 2021, Mr. Marte was arrested in New Jersey. Shortly after Mr. Marte's arrest, Immigration and Customs Enforcement (ICE) ascertained his identity and detained him in Philadelphia. In March 2022, Mr. Marte was charged in a one-count indictment with illegal re-entry after deportation.

---

[2] Mr. Marte avers that his defense attorney failed to appear before the immigration judge who terminated those proceedings. Mem. in Supp. of Mot. to Dismiss at 8, Doc. No. 40. However, the Oral Decision of the Immigration Judge clearly documents that "Guy R. Skiola, Esquire" appeared on behalf of Mr. Marte at that hearing. Ex. 16 to Mem. in Supp. of Mot. to Dismiss at 145, Doc. No. 40.

In April 2023, Mr. Marte filed a counseled motion to dismiss the indictment. In June, after Mr. Marte told the Court that he wished to proceed pro se and file his own motion to dismiss, the Court mooted his counseled motion. In August, Mr. Marte filed a pro se motion to appoint a criminal defense investigator. In September, he filed his Pro Se Motion to Dismiss Indictment, and the Government filed a timely response.

## LEGAL STANDARD

"Fundamental precepts of due process provide an alien subject to illegal re-entry prosecution under 8 U.S.C. § 1326 with the opportunity to challenge the underlying removal order under certain circumstances." *United States v. Charleswell*, 456 F.3d 347, 351 (3d Cir. 2006). A defendant alien charged under § 1326 may not challenge the validity of his underlying deportation order unless he "demonstrates that: (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). In order to successfully challenge the validity of a deportation order under this provision, the defendant must demonstrate all three prongs of § 1326(d). *United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021). Under the third prong of §1326(d), fundamental unfairness means "that some fundamental error occurred and that as a result of that fundamental error [the defendant] suffered prejudice." *Charleswell*, 456 F.3d at 358. The Third Circuit Court of Appeals has explained that "prejudice requires a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." *Id.* at 362.

When the Court evaluates a motion to dismiss an indictment, it "accepts as true the factual allegations contained in the indictment and determines only whether the indictment is valid on its face." *United States v. Ligambi*, No. 09-00496, 2012 WL 2362636, at *1 (E.D. Pa. June 21, 2012)

4

(citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)). A motion to dismiss is "not, however, a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (internal quotation marks and citation omitted). Thus, the Court does not weigh the evidence when evaluating a motion to dismiss. *See id.* (citing *United States v. Gallagher*, 602 F.2d 1139, 1142 (3d Cir. 1979)).

## DISCUSSION

The Government appears to concede that Mr. Marte could satisfy the first two prongs of 8 U.S.C. § 1326(d) and focuses its opposition briefing on Mr. Marte's inability to demonstrate fundamental unfairness under prong three. The Court need not decide whether Mr. Marte has met the first two prongs of § 1326(d) because it finds that Mr. Marte has failed to show that the 1995 removal proceedings were fundamentally unfair under § 1326(d)(3). Thus, the Court denies Mr. Marte's motion to dismiss the indictment.

### I. Mr. Marte has not demonstrated that the original deportation order was fundamentally unfair.

The Court construes Mr. Marte's pro se motion as advancing two alternative theories for demonstrating that his removal proceedings were fundamentally unfair. First, he avers that he did not receive notice of the January 1995 deportation hearing. Second, he argues that he received ineffective assistance of counsel when he was first deported in 1997. Neither of these theories demonstrates fundamental unfairness.

#### A. Mr. Marte received notice of the 1995 hearing.

Mr. Marte gave the INS a fictitious name and now avers that it was unfair for the INS to address notice to the fictitious name he deliberately provided. The Court will not countenance this unconvincing tactic. *Cf. Sabir v. Gonzales*, 421 F.3d 456, 459 (7th Cir. 2005) ("An alien should not be able to make himself unreachable, and then later ask to have his case reopened because he

did not receive notice"). One obvious consequence of furnishing a false name to the authorities is that the authorities will address that individual by that false name when they try to reach him or her. This consequence is neither unfair nor unforeseeable for Mr. Marte, and the Court declines to find that it was a fundamental error in the 1995 deportation proceedings against him.

Notice is, of course, a fundamental requirement of due process in deportation proceedings, *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597-98 (1953), but Mr. Marte received notice of the January 1995 hearing, which was governed by the now-repealed Immigration Act of 1990, *Diaz v. Att'y Gen.*, 241 F. App'x 882, 883 & n.1 (3d Cir. 2007). Under the Immigration Act, "an alien's initial notice of deportation proceedings was provided in an Order to Show Cause, which had to be delivered in person or by certified mail." *Id.* (quoting *Adeyemo v. Ashcroft*, 383 F.3d 558, 559 (7th Cir. 2004)). Mr. Marte was personally handed an Order to Show Cause in July 1994.

Next, INS was required to send a "Notice of Hearing, 'informing the alien of the time and place at which proceedings would be held.'" *Id.* (quoting *Adeyemo*, 383 F.3d at 559-60). Service of this Notice would be deemed effective upon "proof of attempted delivery" of certified mail to the address most recently furnished by the alien. *Id.* (citing *Adeyemo*, 383 F.3d at 560); *Opare v. Att'y Gen.*, 417 F. App'x 197, 199 (3d Cir. 2011) (internal quotation marks omitted) (citation omitted) ("Written notice was sufficient if it was provided at the most recent address furnished by the alien"). Accordingly, INS *both* personally handed Mr. Marte a Notice of Hearing, which informed him that the time and place of his hearing would be communicated via mail to the address he provided *and* sent a Notice of Hearing via certified mail to Mr. Marte's alias at the address he provided. Because "Antonio Sosa-Hernandez" did not exist, the latter Notice was unsurprisingly returned as undeliverable to that address. Nonetheless, the notice requirements of the Immigration

6

Act were satisfied, and the Court declines to find service deficient given that Mr. Marte made himself unreachable by lying about his name.

The arguable existence of two addresses in the July 1994 Order to Show Cause and Notice of Hearing does not alter the Court's analysis of service in this case. Mr. Marte faults INS for sending a Notice of Hearing to 726 E. Allegheny Avenue (the second, hand-written address on the July 1994 Order and Notice) but not to 726 E. Hilton Street (the first, type-written address on the same that was crossed out by hand). He vaguely avers that Esther Cordovi—the sister of Mr. Marte's putative wife, Isabel Cordovi—gave the Allegheny Avenue address to INS and then "[m]aliciously[,] [i]ntentionally[,] and deliberately" failed to provide him with the Notice of Hearing that was sent to that address. Pro Se Mot. to Dismiss at 8-9, Doc. No. 40.

As an initial matter, that Notice was never delivered to 726 E. Allegheny Avenue, so it is not plausible that Esther Cordovi nefariously concealed it from Mr. Marte. More importantly, though, INS satisfied its service obligations under the then-governing immigration statute, which only required that a Notice of Hearing be sent to the "most recent address" furnished by Mr. Marte. *See Opare*, 417 F. App'x at 199. The hand-written Allegheny Avenue address to which INS sent notice was obviously more recent than the type-written Hilton Street address crossed-out next to it, and there is no allegation (nor evidence) that the Order and Notice that INS physically handed to Mr. Marte in July 1994 lacked the more recent, hand-written Allegheny Avenue address. This document also clearly stated that Mr. Marte would be notified of the time and place of his immigration hearing by mail sent to the most recent address provided by him. Thus, Mr. Marte was on notice that the immigration judge would notify him about his hearing by sending mail to 726 E. Allegheny Avenue. Any confusion about how to reach Mr. Marte was attributable to the false name that Mr. Marte himself provided INS, which rendered mail undeliverable at the address

7

he provided. As the Court has already made clear, service was not insufficient merely because Mr. Marte provided a fake name that made him unreachable.

Thus, Mr. Marte received notice of the 1995 hearing. That process was not fundamentally unfair merely because service was sent to an alias and address furnished to INS by Mr. Marte himself.

### B. Mr. Marte has not demonstrated that he received ineffective assistance of counsel in his 1997 removal proceedings.

Mr. Marte's 1997 removal hearing was straightforward: the immigration judge determined that Mr. Marte had already been ordered deported in 1995 and terminated the case. Mr. Marte contends that counsel for this proceeding was ineffective and tenders a laundry list of accusations against his former lawyer, including: (1) counsel's alleged failure to appear at the 1997 hearing, (2) counsel's failure to inform the immigration judge of Mr. Marte's alleged "substantial assistance" to the Government, (3) counsel's failure to object to the alleged entry of an affidavit by Isabel Cordovi into evidence, and (4) counsel's conflict of interest based on his alleged representation of Ms. Cordovi. Mr. Marte has failed to demonstrate counsel's ineffectiveness by any of these conclusory allegations.

The "Due Process Clause guarantees aliens the right to effective assistance of counsel in removal proceedings." *Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378, 385 (3d Cir. 2020) (citing *Fadiga v. Att'y Gen.*, 488 F.3d 142, 155 (3d Cir. 2007)). To prevail on his ineffective assistance of counsel claim, Mr. Marte must demonstrate "that competent counsel would have acted differently and that the petitioner suffered prejudice as a result. *Morales v. Att'y Gen.*, No. 20-3372, 2022 WL 385544, at *3 (3d Cir. Feb. 8, 2022) (citing *Calderon-Rosas*, 957 F.3d at 388). To show prejudice, Mr. Marte must establish a "reasonable probability" that, but-for counsel's errors,

8

the immigration judge "would not have entered an order of removal." *Calderon-Rosas*, 957 F.3d at 387 (citing *Fadiga*, 488 F.3d at 159).

As an initial matter, the Court is not persuaded that Mr. Marte's attorney was incompetent. The immigration judge's oral decision clearly notes the presence of Mr. Marte's counsel at the June 1997 hearing. *See* Mem. in Supp. of Mot. to Dismiss, Ex. 16, at 145, Doc. No. 40. Mr. Marte himself is unable to recall the details of his own alleged "substantial assistance" to the Government. *See id.* at 37. The affidavit by Isabel Cordovi about which Mr. Marte complains appears to post-date the January 1995 hearing that Mr. Marte wanted his counsel to challenge. *See id.*, Ex. 3, at 62 (referring to a relationship ending in "October of 1996"). And Mr. Marte's bare assertion that his lawyer was also the "defense counsel of . . . Isabel Cordovi during the [June 1997 hearing]" is not substantiated by any evidence at all. *See id.* at 42. Thus, the allegations Mr. Marte has made against his attorney fail to convince the Court of his attorney's incompetence.

Finally, even if the Court were convinced by these allegations, Mr. Marte has not established a reasonable probability that the outcome of the 1997 proceeding would have been different absent these allegations. The immigration judge in 1997 merely observed that Mr. Marte had already been ordered deported and closed the case. To alter this outcome, Mr. Marte's counsel would have needed to establish some reason that the immigration judge should not rely on the 1995 removal order. However, none of the allegations Mr. Marte makes against his counsel at the 1997 hearing is even relevant to the 1995 removal proceeding that formed the basis for his deportation. Insofar as Mr. Marte faults his counsel for failing to object to the notice procedures followed by INS in advance of the 1995 hearing, the Court has already concluded that these procedures were not fundamentally unfair.

Thus, Mr. Marte has not established that he received ineffective assistance of counsel in his 1997 deportation proceedings. Because Mr. Marte has failed to demonstrate that his underlying removal order was fundamentally unfair pursuant to 8 U.S.C. § 1326(d)(3), the Court denies his motion to dismiss the indictment.

## II. Mr. Marte has not demonstrated that he is entitled to the appointment of a criminal defense investigator.

Mr. Marte has filed a pro se motion requesting that the Court appoint a criminal defense investigator. To obtain an appointed expert, a defendant must offer "more than undeveloped assertions that the requested assistance would be beneficial." *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985). However, Mr. Marte's motion includes only undeveloped assertions that a criminal defense investigator would be helpful in general ways. For example, Mr. Marte writes that a criminal defense investigator could: "find witnesses and evidence that will establish reasonable doubt," "understand the charges and the laws that relate to the crime," "go over the entire discovery," and "determine whether there are any inconsistencies from one witness to the next." Mot. at 1-2, Doc. No. 39. These general observations are insufficient to establish Mr. Marte's entitlement to a criminal defense investigator, particularly in the face of the lack of merit of any of his arguments, as discussed above.

Thus, the Court denies Mr. Marte's motion for appointment of a criminal defense investigator.

## CONCLUSION

Mr. Marte has not established that the entry of his 1995 deportation order was fundamentally unfair pursuant to 8 U.S.C. § 1326(d). Thus, the Court denies his pro se motion to dismiss the indictment. The Court also denies Mr. Marte's pro se motion for appointment of a criminal defense investigator. An appropriate order follows.

BY THE COURT:

_____
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**